Please be seated. We're happy to hear argument in our second case, United States v. Span. Mr. Carpenter, whenever you're ready. Mr. Carpenter, you're losing your audience. Sorry about that. May it please the court. This case presents two issues under the Armed Career Criminal Act, or the ACCA. One broad and one narrow. These issues had a tremendous impact in this case as they raised Mr. Span's sentence from an advisory guidelines range of just three years to a statutory minimum sentence of 15 years. Before walking through the issues, I think it's important to take a step back and to consider the impossible catch-22 that the government's position in this appeal creates. On the one hand, the government seeks to hold Mr. Span responsible for all of the allegations in the underlying state court indictments, even those allegations that are entirely irrelevant to the elements of the state offenses. But on the other hand, this court's precedent prohibits Mr. Span from introducing evidence outside of the Shepard documents that would rebut those allegations. And that's precisely the type of evidence he could... What case holds that? I noticed you said that in your brief. I mean, usually we have the government wanting to put in evidence that's outside the Shepard documents. I wasn't familiar with case law that said that the defendant could. The case law in this court, and I think in every other circuit, has been clear that in making the different occasions of determination, the district court may rely only on the Shepard documents. That's what they say, but there's not a particular discussion of defendant trying to put in... It's certainly true that in most cases it is the government seeking to introduce the non-Shepard evidence. In this case, I think there is a key piece of non-Shepard evidence that was before the district court but was not considered, and it cuts both ways, just to be candid. On the one hand, it supports the date of the offenses in the judgment. It's an arrest warrant that says that all of these offenses occurred on January 18th, and so he could have relied on that if he had the opportunity to put it before a fact finder. Now, again, to be candid, there are other allegations in those police reports that Mr. Spann disagrees with, and that had he had a full fact finding on this, he would have challenged and we would have seen how it plays out before the fact finder. I think the important point here is that Mr. Spann would have had the opportunity in state court to rebut these factual allegations through additional evidence if they had been relevant to his state court sentence. They weren't relevant to the state court sentence, and they are relevant now, so it puts him in a real conundrum that he could have challenged them then, but he can't now. That catch-22 is inconsistent with the controlling precedent, and I would ask this court to reject it. On the broader constitutional issue, I would ask the court to hold that Apprendi plot applies to this different occasion of determination, but even if the court doesn't go that far, I would ask it to apply the principle that it has applied in cases like Boykin and Tucker, which is that ambiguity on the face of the Shepard documents must be construed against the government. Well, these documents aren't exactly ambiguous. They're contradictory. Well, I think the net result is the same, is that when we look at the face of the Shepard documents, we don't know what happened, and it is inconsistency. In some cases, it is simply a lack of information. In your brief, you quite correctly say that the determination of whether or not these state charges took place on the same day is the ultimate determination, whether it's the same offense or associated, is a question of law. But surely determination of what day they took place is a question of fact underlying that determination. Your Honor, I disagree with that, and the government draws an analogy to cases like Archie and cases like your decision in McDowell last year where there are fact findings made by judges based on a preponderance standard under the Almendarez-Torres case. And there's no problem with those cases. They simply don't apply here. And the reason is that in each and every one of those cases, the district court is given full authority to make a traditional fact-finding determination based on all of the available evidence. If what we're really doing here is asking a district court to resolve a disputed issue of historical fact as to the date on which these offenses occurred, it makes no sense at all to limit the district court to considering a sliver of the available evidence, that sliver being what is in the Shepard documents. We know from this Court's decision in Gomez in 2000... Well, it might be unconstitutional, which goes to your second point. That absolutely goes to the second point. But I'm not sure I see how different this fact will determine it. I mean, this looks quintessentially like a question of fact. It looks quintessentially like a question of fact, except that the district court is constrained by this Court's precedent to only consider a tiny sliver of the available evidence. Right. And that isn't the case. Yeah, but often we're only... Usually courts can only construe a tiny sliver of the evidence because it's the only evidence that's admissible for that purpose. There may be a whole world of evidence that prosecutors or public defenders know about, which is not in the case. So I don't know that that makes this factual finding distinguishable. I think it does because in... And just to go to the situation in Archie and McDowell, in those cases this Court allows district courts to consider, for example, in McDowell it was an NCIC report, in Archie it was other docket entries. If it were appropriate and necessary, the court in those situations could hear live testimony, for example, from a clerk of court, perhaps, to explain a discrepancy in state court documents. All of those fact-finding tools are unavailable to a judge making the different occasions determination under this Court's precedent. And this is an extremely important question of historical fact here. As I said, it raised the sentence in this case from 3 years to 15 years. And if a question of historical fact is that important, then why are we limiting the district courts from considering available and relevant evidence that would certainly be admissible under the rules of evidence in terms of its relevance? For example, if he had chosen to, Mr. Spann could have taken the stand here and offered his version of exactly what happened. The government, if it had wanted to under a full fact-finding before a jury, which goes to the second argument, it could have introduced evidence from the investigating officers as to what their beliefs were as to the nature of the underlying offense. And again, they would have had then to explain why their initial police report said these offenses all occurred on the same day. Maybe they would have had an explanation for that, maybe they would not have. But, again, that's what we believe. And that bleeds into the second argument, which I'll touch on for a second, which is should this need to reach your second contention if we agree with you on your first, correct? That is correct. I think you should, though. I think we should anyway. I think you should. I mean, there's no way to write that. Well, look. I mean, not that we wouldn't, but really it doesn't write. You've been in that position of working. I can absolutely write this opinion for you, and I can do it right now. I don't think it would have, knowing who you work with, I don't know that that would have passed. Well, let me take a stab at it. And that's to say, in terms of why the court should reach that issue, even if it agrees with us on the first, the reason is that if you agree with us on the broader constitutional issue, it is logically the antecedent question. Which fact-finder, judge, or jury should be tasked with making this determination? If you agree with us that the answer to that question is the jury, then you never have to reach our narrower argument, which is what? Aren't you turning the avoidance cannon on its head? I don't think so, Judge Davis, because we're not saying that this statute is unconstitutional. What we are saying is that this statute requires a finding of fact to be made before imposing an act of sentence, and that under the Sixth Amendment that finding of fact is one that must be assigned to the jury rather than the judge. Now, it would be a different situation if Congress had specifically said in this statute, we want the judge to make the different occasions determination. In that situation, you would have to say that what Congress has done is unconstitutional. I don't think we're applying a statute. I think we're applying Supreme Court precedent. Those are two very different things. Well, but the Supreme Court is interpreting a statute, so ultimately you're applying a statute. But we're not applying a statute. We're trying to follow Taylor and Shepard and the Supreme Court's instructions on how certain decisions are made. Congress hasn't spoken to that at all. And Almodarra's Tories. And most importantly, DECAMP. And I agree, Judge Motz. You wrote in McDowell last year that Almodarra's Tories might not make sense, but we're stuck with it. And that's certainly true. So how do we get to your – how do we, the three of us, get to your constitutional argument? Well, I think the answer is straightforward under DECAMP. Because while this court is bound by Almodarra's Tories, it is equally bound by the reasoning that the Supreme Court advanced just two years ago in DECAMP. And what – if you look at that decision, what it said, it reviews Apprendi and it reviews Almodarra's Tories. And it says that the scope of judicial fact-finding is limited to recognizing a prior conviction and identifying a prior conviction. Those are the verbs, recognizing and identifying, that the Supreme Court uses in DECAMP. It goes on then to say that the court may not weigh the amplifying but legally extraneous circumstances surrounding a prior offense. Now, if you go to this court's precedent in Letterlow, which has been applied repeatedly in cases like Boykin and Tucker, and look at the five factors that Letterlow outlines, none of those – all of those factors are amplifying but legally extraneous circumstances. The location of the offense, its nature, the identity of the victim, the criminal objective, whether it was a break in time to allow a conscious or knowing decision. All of those items that this court's precedent tells district courts to consider in making this determination are legally extraneous circumstances. What that means is that they should be decided by a jury. And this case illustrates why, because those factors are often the subject of a factual dispute that requires a district court to make findings of historical fact. That's the reason I think the court can and should resolve the broader constitutional question. So let's get back to the more mundane question. Certainly. How does – how did the district court here – I mean, I've read the record. How did the district court here conclude by a preponderance of the evidence that the government has satisfied its burden? Well, what the district court did is exactly what the Supreme Court in Shepard said that a court can't do in reviewing Shepard documents, and that is it resolved a disputed issue of fact. If you look at Shepard 544 U.S. at 25, the Supreme Court says that district courts reviewing Shepard documents cannot make a disputed finding of fact about what the defendant and state judge must have understood. That's exactly what the district court did here. Say that to me a little more slowly. Sure. The portion from Shepard? Yeah. At page 25, district court cannot make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea. That's exactly what the court resolved here. Did this offense occur on one date, or did it occur on a few separate dates? That was a clear dispute of fact here. I don't know that that quote goes exactly to what was done here. Well, certainly in Shepard it was dealing with the violent felony determination, and here we're dealing with different occasions. There's no doubt about that, but there's no constitutional distinction between those two. In either situation, the district judge is answering questions based solely on the face of the Shepard documents, and what Shepard says is you cannot resolve a disputed finding of fact. Is the upshot here simply that the good district judge, he didn't say this, but essentially it appears to me that he said, I'm going with the indictments. It does seem that. That's essentially, I'm going to essentially ignore these other Shepard documents, the transcript of plea, the judgment. I'm just going to look at the dates on the indictment and make my choice that way. And that's exactly what he seems to have done, and it's exactly the opposite of what you should be doing. If the court is ever going to, if Almendarez-Torres covers this situation, what it says and what Apprendi says is that Almendarez-Torres survives because there are judicial or procedural safeguards in place with respect to these prior convictions. The judgment entered at the end of that process has got to be the most accurate thing. You can't go to the indictment. It's black letter law, and every federal criminal jury hears it. The indictment is nothing but an allegation. And here the district court is relying on an allegation in the indictment rather than the conclusive record of the prior state court proceedings, which is the judgment, which says these offenses all occurred on the same day. I'll turn briefly to the government's alternative argument, which the district court didn't accept and this court shouldn't accept either. That argument suffers from two flaws. The first is that it assumes all of the factual allegations in the indictment, even going beyond the dates, are true. And that methodology is flatly inconsistent with DECAMP, which says when you're looking at Shepard documents, all you can consider are the elements of the offense. Now, even if we were living in a pre-DECAMP world where you could just open up the indictment, assume it to all be true, the government still couldn't win here because these indictments do not preclude the possibility that Mr. Spann committed these offenses simultaneously by acting together with a co-defendant. And if you look at Joint Appendix page 196, that's the judgment in this case. The district court imposed restitution jointly and separately with a co-defendant who presumably had been charged in a separate bill of indictment. That puts this case pretty much on all fours with the Fifth Circuit's decision in Fuller and also makes it very similar to the fact pattern that this court addressed in the Tucker decision. That is, the Fuller analysis is particularly important because the Fifth Circuit says we can't take the allegations as true and under Texas state law, as in North Carolina, there need not be an allegation in the indictment as to whether he acted alone or acted in concert. So both you and Judge Motz are right. The record is both ambiguous and contradictory. Yes, that's absolutely correct. If there are no questions, I'll reserve the rest of my time. Good morning. Good morning. May it please the court, Amy Ray for the United States. Your Honors, this court's decision in Thompson made quite clear that the separate occasions determination is one that may be made by a district judge based on Shepard-approved documents. And in Washington, this court made clear that it is a question of fact determined by the preponderance of the evidence. A judge may consider the universe of Shepard-approved documents, look at them, determine when, in fact, a prior conviction occurred, or it also, in Thompson, this court mentioned that the victim, the identity of the victim, the location, and the date are all pieces of information that fall within the Almendrez-Torres exception and nothing in DeCamp purports to limit that exception. So unless DeCamp overrules Thompson and the Third Circuit's decision in Blair, Eleventh Circuit's decision in Broomfield, so far even this court's unpublished decision has held that DeCamp did not overrule Thompson and the universe of facts that a judge may, or documents, what's in those documents, that a judge may properly consider in determining whether or not the fact of the prior conviction, which includes whether prior offenses were committed on separate occasions. In this case, those documents, the indictment combined with the plea transcript and even considering the judgment, make clear that they were, or the district court could reasonably conclude that those prior offenses were committed on separate occasions. The indictment includes dates of three of the offenses that are wholly consistent with the ones in the plea transcript. The judge looked at those and said, yep, those are the same, at least three of them were committed. But even if one considers the judgment, we see that the victim is different on two of the according to the judgment. And we also see that the judgment reflects that there's a third armed robbery that occurred on a different date. Right there you have three separate occasions. Although it is true that an offense that was committed on, you know, multiple offenses on the same day could theoretically be committed at the same time, this court has always recognized that this is a common sense determination. And where the indictment identifies a different victim, a different corporate victim in the case of the judgment and the indictment, we have two separate offenses that are occurring on the same day because those robberies couldn't have occurred at Cash America and Pawn Mart at exactly the same time by the same defendants, different corporate victims. And then we have the third. In addition to that... You said they could not? They could not have the – there's two different robberies occurred at two different locations, two different times. On the same day? On the same day. Okay. That could not have happened as one event, right? Correct. Why not? Let's say you agree that the state doesn't require to be charged as betting versus being the principal and the assessor in the first degree, right? I do. All right. Suppose you're part of the robbers of both places and your job is to synchronize when their times are open and ready to go in. And you have information and you just make one command by walking, talking to two different people in the conspiracy to say, go. You mean tell me you wouldn't be involved in a robbery of two places? No. Why not? Your Honor, Judge Gregory, no. I mean, you're right. The implication of your question is correct, that theoretically it's possible. I mean under the facts of the indictment in this case. What facts in this case preclude that? But also what I mean is that the judge, the district judge, gets to make that determination based on all of the facts that are presented. Not from whole cloth? He or she doesn't? Not from whole cloth. Tell me on this record, on Shepard documents, that preclude that from being the case here. The Shepard documents have some inconsistencies, and the government recognizes that. But there was never a suggestion in this case. What precludes that from being the case here based on those documents? There was never a suggestion. The difference between this case and Tucker and all of the cases that the defendant cites talking about an accomplice is that there was never a suggestion in this case that there was an accomplice. What about the co-defendant? I don't know that there was a co-defendant, Your Honor. Exactly. Exactly. We have no idea. We have no idea, nor did the district judge. But the document refers to a co-defendant. But that doesn't make any difference if we credit, as the district court did, the indictment. Right. And the district court, the point is that I'm trying to make, and I understand that there are ways that the district court might have resolved this differently, but this court in Thompson vested the district court, and Almendrez-Torres vests the district court with the authority to resolve those disputes within Shepard-approved documents. So in a Social Security disability case where an ALJ ignores part of the evidence, we reverse. We say you can't do that. You can't ignore substantial evidence. But in a criminal sentencing, a district judge gets to ignore a part of the limited universe of documents that bumps up a sentence from three years to 15 years? That can't be the law. Wait a minute. It can't possibly be the law. The district court recognized the indictment. The district court didn't ignore it. The district court considered the indictment and said he was considering the indictment. He relied on the indictment. I apologize. The judgment. That was a Freudian slip. The district judge here relied on the indictment. Because otherwise, how do you find by a preponderance of the evidence, if you're fairly considering all of these documents, how do you conclude that it is more likely than not that the indictment is correct rather than the transcript, the plea, and the judgment? How do you do that? Because of the consistency between the indictment and the plea transcript. Those were all consistent. But the plea transcript itself has markouts. Can you explain the markouts? No, Your Honor. So you can't explain the codefendant. You can't explain the markouts. Wouldn't you agree that the judgment is smarter than the indictment in terms of being? Why not? After something goes through the process, you mean to tell me the indictment would be more accurate than what the judgment is? Your Honor, I would say that it is fair to look at this record. I mean, if this court is going to determine that the district court clearly erred in finding in this case that the offenses were committed on separate dates, the government respectfully disagrees with that because the district court had before it the judgment, the indictment, the plea transcript, said, hey, two of these three are consistent. No, Your Honor. In state court, it's quite possible that it was a Scrivener's error in terms of when those judgments, the date on the judgment itself of when the offenses occurred. There's no reason to suggest that in the volume business that is state court, that that's not simply a Scrivener's error. And the consistency between the question is, did the district court have the authority to resolve that dispute of fact? This court's decisions make clear that it does. It's not a question of authority, Ms. Ray. Listen, by the way, it's so great to have you in Baltimore. Well, thank you, Judge Timbers. It really is. I mean that. Both of you. Yeah, I agree. Both of you, yes. But really, it's not a question. You keep talking about the district court's authority. I don't think any one of us or any of our colleagues questions the district court's authority. The question here is, did the district court exercise that authority in keeping with the underlying principles? And I'm still having difficulty understanding how you can have a document that says it happened on Tuesday and a document that says it happened on Wednesday and the district court says, oh, I conclude it happened on Wednesday. Where's the preponderance of the evidence if that's all the documents say? And I submit that's all these documents tell us. I understand that. And, Judge Davis, if you're – Well, is that all the documents say? No, and that's what I was – The documents do not – There are not only two sets of documents. There is not just the judgment and just the indictment. And the district court – And I want to make clear, the district court did consider the judgment. Let me say that clearly. Instead of the indictment, I mean the judgment. The district court said, I'm considering the indictment, the transcript of plea, and the judgment. And I find that because three of the offenses, the dates are consistent on the transcript of plea. Yes, they were marked out, but they were ultimately – And the court says, I'm going to ignore the fourth offense, but at least three of the four prior armed robberies were committed on separate occasions. And this court in Washington says, this is simply a factual determination. When were they marked out? We don't know when they were marked out. So why do you think you can rely on that? Because those were the documents that ultimately the state court produced. Those are conclusive, Shepard-approved documents. And at the end of the day, what they reflected was three different dates for those armed robberies that completely coincided with the three different dates that were on the indictment. And the indictment has not just dates, as others have, but the description that we have of the offense with the different victims of the defense. Yes, Your Honor. And that's part of what the government is asserting in its brief. If the court looks at the North Carolina armed robbery law, these had to be separate places, separate businesses, separate victims, separate – it identifies the item stolen, and those had to have occurred on separate occasions. But that leads into sort of your subsidiary argument. That's not really – all I'm asking you is, isn't it fair to say that the indictment had more specific information about the time, the place, and that it was a different time, place, and victim than anything else? Yes, Judge Vance. Than any of the other documents. Absolutely. The indictment does contain more information. So even if there were just three different totally, if district courts are allowed to make findings of fact – I mean, it seems to me that's the big – in my mind, that's the big question. Is this a finding of fact, or somehow does this become a question of law? Well, I think the ultimate separate occasions determination is a question of law, but find facts that inform that, facts that are underpinning that legal determination. It is a finding of fact. And the district court in this case, though we might say, oh, an indictment is somehow less reliable than a judgment, that's not what the court has said in Shepard or Thompson or Washington. All of the Shepard-approved documents may be considered, and a district court has the authority to determine what the fact was. And here the court did look at the indictment, which was more specific, and did identify the dates. And those were exactly the dates that ended up in the plea transcript. And the handwriting is at least the same. That's one thing that I noted on the plea transcript. But that is what those Shepard-approved documents are what the court had the authority to consider. And two of the three documents established that those prior offenses, three of them were committed on separate occasions. Separate dates? Separate dates. And I want to make also clear that the defendant's argument in this case would mean that any time a felon in possession challenges when his prior convictions occurred, the government is going to be at trial producing not only, we're not going to just be producing the prior conviction for purposes of 922G. We're now, if the defendant's argument is successful, we have the constitutional requirement duty to produce evidence of all three prior armed robberies. And that's an interesting position for the defendant to be advocating that that is what the Constitution requires, that the government produce evidence establishing dates and times. That's exactly what Almendrez-Torres was designed to prevent. And nothing in DECAMP suggests that that exception is narrowed. So the government in this case presented the Shepard-approved documents. Well, it should be difficult for the government to do this. Think about it. We already have these draconian sentencing for what you tried for. And then somehow we need to shoehorn it yourself so that otherwise it's almost like we've got to find a way to enhance something that's not on trial again. That's the whole idea. You're limited in that sense. And if there's any ambiguity in that regard, then you don't get that 15 mandatory. It should be difficult, you think about it, because you're basically going back and say, I'm going to give you five times as much time as you're going to get because I can say that these are identical. And I still say the question is whether or not you can say definitively from this record that that offense didn't occur at the same time, even though it dates it. How can you say definitively? Well, Your Honor, because this court has made clear that the district court has the authority to consider all of those documents and resolve disputes. So this court's precedent does not say that they have to be – that those Shepard-approved documents have to have absolutely no consistencies. In fact, it suggests the opposite. And even though the separate occasions determination may not have been the precise question that was presented in Washington or in Archie, for example, it was still a question of what is the district court's authority? And it's a fact finder. That's it. It's a fact finder in this situation. They get to look at the three documents and resolve disputes and say, by preponderance of the evidence, this is what I find. If Judge Cogburn had rejected the 15-year sentence, I don't think you'd be here. Oh, no, I agree. If Judge Cogburn had resolved the fact dispute differently, the government would not have appealed. So under your submission, whether someone gets three years for 15 years turns on what the district judge had for breakfast. Your Honor, it's not my submission. That's exactly your submission. So Judge A says, these documents, you know, one of the documents point this way, one of the documents point that way. I'm going to give them 15 years today. Your Honor, there were two. But on Thursday, similarly situated defendant comes before the court, document points this way, points this way. You know what? I think today I'm going with the three-year option. That can't be right. Your Honor, that's exactly right. Under this court's Washington decision, the judge gets to make the factual determination. On the basis of what he had for breakfast. No, Your Honor, I didn't suggest on the basis of what he had for breakfast. Based on the documents before him, there were two of three documents. You just said that Judge Cogburn could have ruled the other way. And frankly, I think when you agreed with that, you gave away your case. Your Honor, I don't. Because if he could have ruled the other way, that means the evidence is in equipose. And if the evidence is in equipose, then you lose. The government loses. Your Honor, I didn't. How can you say if he'd given him three years, I wouldn't be here? The government, as you well know, always appeals these sentences. Almost always. Wait a minute. Almost always. Your Honor, we almost never appeal sentences. In fact, we almost never appeal sentences. What court have I been sitting on? I think you're making a representation about your district. Well, I think what I'm making. I'm talking about the United States Department of Justice. We have five levels of approval to get through to appeal a sentence. It is not easy. What I responded with, Your Honor's question, was we would not have appealed. That is true. Because I happen to know that this is not an issue that we likely would have appealed. Unless the district court held that DeCamp overruled Thompson. In which case, I think we probably would have appealed. But on a question of fact, where a judge has these documents, I'm not suggesting that Judge Cogburn would have been correct to rule the other way. I'm saying we wouldn't have appealed. Because it was a finding of fact. And the government is not going to appeal. And I respectfully, I would be surprised if we had. But I can tell you that our district would not appeal a finding of fact that goes against us in a sentencing case unless it was, I can't even really, I can't think of a situation in which we would do that. However, that doesn't mean that I would say that Judge Cogburn could look at these documents, these Shepard approved documents, and reasonably find the other way. I don't think so. But that's not really the question. The question is could the judge reasonably determine based on these facts that the four prior armed robbery offenses, at least three of them occurred on separate occasions. When two of those documents have consistent dates and all three of them identify different dates. How could he have reasonably found contrary to your position? How could he have done that? Oh, no, I don't think he could have. But we wouldn't have appealed it. If your honest question is could the district judge have looked at these documents. But you just said to me a few minutes ago that he could have reasonably found to the contrary. I think I said, and if I did not say it, let me say it clearly now. Because I think what I said was we would not have appealed it, and it is possible. It is theoretically possible for the district judge to look at this. This is a finding of fact. Theoretically possible. It's a finding of fact. The judge could have made a different decision. We lose these questions all the time on findings of fact. We don't appeal them. On what basis would he have ruled the other way? Your Honor, I can only tell you that I don't think it would have been properly by a preponderance. He would have looked, I assume, at the judgment. He would have imputed some possibility of an accomplice. What do you mean it would not have been by a preponderance? I'm saying that I don't think the district judge could review these Shepard-approved documents and properly determine based on a preponderance of the evidence that these offenses occurred on the same day. However, if the judge did make that finding, it is a finding of fact, and the government would not have appealed it. So it would have been clear error? Is that what you're saying? Had he ruled the other way? I think that yes, but I don't think that the government would have appealed it because there is information in that record that suggests that they occurred on the same day. I'm pretty sure you said to me earlier he could have reasonably ruled the other way, but I accept your correction if that's what you're saying. Fair enough. I appreciate that. The government's position is, and I would really refer your honors to this court's discussion in Washington for what a district court does in a sentencing proceeding when resolving the fact of a prior conviction, which this court's decision in Thompson makes clear includes not only the fact that some conviction occurred earlier, but the date, the location, the victims. Do you have a joint appendix in front of you? Can you get one? Not actually. I have some notes. If you look at JA 195, and I'm going to ask your colleague to do this too, this is the judgment, right? Yes. And in the judgment it says the offense date is 118-2000, right? Yes. And then if you look at JA 196, it says the date of this judgment is 10-20-2000, right? Yes. Second from the bottom. I see that, yep. Then if you look almost directly opposite that, it says the defendant shall be given credit for 276 days in confinement prior to the date of judgment. If you subtract the 276 from 10-20, you get 118, which is the date that they put down when the offense took place. Offense occurred as opposed to when he was arrested. Correct. Right. Thank you. Now, I might be reading that. That's why I wanted to be sure that that's what. That's what I see. Thank you. My colleague can review it with me and improve my understanding of it. Right. And I see that my time is up, Your Honor. If I may just comment very briefly, what I would anticipate my colleague saying perhaps is the district court didn't note that fair enough, but it's what was reasonable. Did the district court find reasonably in this case that at least three of the four prior robberies were committed on separate dates? Yes. So what the district court is doing is looking at three documents that it's looking at that are Shepard approved, and it's trying to find which it finds most credible. Right. It concluded the way it did. And it's possible to take information from all three, even if one says the judgment's not quite credible on those dates that were listed, they could still look at the judgment and say, oh, here's another date, that's helpful, just as Your Honor did Judge Motz with the date of the judgment was entered versus the date of offense that was identified on that. Is that rationale consistent with the rule of lenity, though? In other words, you have these inconsistencies as ambiguity, you say, well, I'm going to make it a credibility determination and decide. Your Honor, the rule of lenity is when there's an ambiguous question of law. This is a question of fact, and district court judges are vested with the responsibility to resolve disputes. Well, it's a fact you can't go behind. The fact is the date is the date. You're not retrying cases. That's different. It's not really purely a factual question in that regard. If the date was the date listed, no matter what the judge believes, you agree with this, he or she couldn't go anyplace else beyond Shepard to clarify it for credibility purposes, right? Sure, right. They're limited to Shepard approved documents, yes. So it's not really a factual question to the sentence. It's really legally in terms of where these separate, and if you have inconsistent dates, you can't resolve them by saying I find one date more credible than the other. What you have is two dates that are different. That's the fact ends right there. Except, Judge Gregory, if the documents as a whole can be seen reasonably to have more evidence in favor of one date than the other, and the judge in a sentencing proceeding is the fact finder, if it were a bench trial, the judge would be able to determine whether he committed the offense, even though there would be disputed evidence. That's what fact finders do. And this court's decision in Washington. That is a problem that the Supreme Court may deal with ultimately. Absolutely. The Supreme Court may ultimately say what we said in DeCamp applies to the separate, may say that what we said in DeCamp applies not only to the nature of the look at it is considered part of the fact of the conviction itself. But so far the Supreme Court hasn't done that, and I would respectfully suggest that it didn't do that in DeCamp, and this isn't the case in which, therefore it did not overrule this court's decision in Thompson. I appreciate your time. We respectfully request that this court affirm the judgment of the district court. Thank you very much. Thank you. Mr. Carper. I want to start, Judge Motz, with your math, which I don't quibble with, and in fact I wish I had pointed it out myself because that's entirely consistent with our theory of this case. He went out and committed three. Could you explain the math to me, please? Well, I think what Judge Motz is suggesting, and I didn't look at it and double check it, but what she's suggesting is if you look at the date the judgment was entered, which is in October, and you subtract back the credit for time served in 276 days, it gets you back to January 18th. And what's the significance of that? That's the date on which we contend that he went out and robbed three stores. No, that's the date in which he's imprisoned because that's when. Well, it's both. So he had to. Well. Judge Motz, let me explain exactly why that's consistent. Had he was, he would, he committed the crimes all in the same day and he was in prison for them that same day? Judge Motz, it's entirely common that people are arrested on the day of the offense. There was a, there were three, in our view of the world, which we believe is supported by the record, there were three corporate employees who were robbed by Mr. Spann on that day. I mean, they each picked up the phone call, called 911 and said, Hey, a guy just robbed our place. Here is where I am. The police responded, caught him, arrested him, put him in jail that day. And that's exactly why the credit for his time served began on January 18th. And that's exactly consistent with, if you look at the district court docket 35 exhibit two, it's not submitted in the joint appendix because it's not a shepherd document. So it's not relevant under this court's precedent. That's an arrest warrant. It's dated January 20th. And it refers to all three offenses having been committed on January 18th. I have another question to ask you about this document. If you'd look at JA 197 or 198 or 199 or 200. Okay. And this is the indictment. Yes. And you see, we'll just take there. You can, I think you can trust me that they all share this. You see how it says the 30th of December, 1999. As the date when this took place. Yes. I'm at one 97. Right. Are we together? Yes. Yeah. And then if you look down under at the bottom and the little writing pending PC, we have the date 99 as in 1999, 1230. And that's consistent with all of them. In other words, The printed date that's on the document. Giving these indictment documents a little bit more than they might otherwise have. Do you understand what I'm saying? I don't, I don't actually follow. I don't follow. I don't follow what, what significance we're giving to pending PC. These indictments were, as I take it all issued on February 7th, 2000, which is several weeks after the January 18th date. But then to the date, the date we're looking at, forget the business about when they are issued for a moment. The 30th. Oh, it's 1239. Yeah. Corresponding to the pending PC, 99, 1230. The same thing happens with the next one. I don't think. 17th, 1999 corresponding to 99. Now I see your point. And I don't think it changes significantly. The fact that. I didn't think it would change your, I was just wondering if you. I wasn't aware of the dates and I don't think it, or the separate, the fact that the indictment repeats the erroneous date, doesn't change anything in my mind. I think if it was wrong in the opening paragraph, it's wrong down below. These, these. Dates look like they're computer generated. Well, somebody had to enter the information into the computer and it's the date on which the date. Okay. Which the indictments entered. I understand your argument, which is afterwards. What do you make of the fact? It appears that one of the indictments. Was prepared by a different assistant district attorney compared to the other three. I think one reasonable inference to draw from that is that the three that were committed on the same date were handled by the same district attorney. No, but that's not the, that's not the, what the, that wasn't the basis of the court's finding relies on the one that took place on the 17th of November. And certainly by a different. Right. The district court casts that one aside and resolves the disputed finding effect. I think that goes, the real question here is, are we giving deference to a district court's review of Shepard documents? And I don't think I know of any case. No, the district court didn't cast that one aside. It cast another one. It cast the January 11th one aside. The November 17th one was the one that was signed by an assistant, another assistant district attorney. My mistake on that. It was, it was what I made of them. Who knows if this is right or not. It was the first one. If you believe. That's exactly my point. It took place in November when the other two took place in December and January. When you say, who knows if I'm right or not, that's exactly my point. Under this court's precedent, that ACA enhancement applies only if these documents definitively establish. That's the language that Judge Shedd and Judge Niemeyer used in the Tucker decision. Only if those documents definitively establish, and I think we can look at these documents and say pretty clearly, they do not definitively establish that these offenses were committed on separate dates. And for that reason, the district court's decision to resolve that dispute of fact is wrong. Now I go back to Shepard, which again says that the district cannot resolve disputed findings of fact. Now there the disputed fact is, is the robbery or the burglary in that case of a building or of a boat or a motor vehicle. The court says that is a factual dispute that you can't resolve. The same thing is true here. There's a factual dispute that the district court interviewing the Shepard documents cannot resolve under Supreme Court precedent. But you and I both know that this is assertedly under the exception to that rule. Now we may not agree, this entire panel may not agree with that exception. Well, that's the law right now. Well, the law is, I think it's very important. I agree with you 100% that you have to apply Amadeiros Torres, but what you don't have to do is extend it beyond the justification that it's, that has been given for it. The Supreme Court has said it only applies where there have been constitutional safeguards in the underlying state proceedings. I think that may be right. I think you may be right, but this panel can't do it. This panel can absolutely do it because Day Camp undermines that precedent. If you read Judge Wilkins' dissent in Thompson, it rings absolutely true with what the Supreme Court says in Day Camp. And so I would ask the court to create that circuit split. I'm sure the government will then appeal and the Supreme Court will have a chance to consider a Solicitor General's petition on that. I don't remember my time, but if you'd permit, I'd like to make two very quick responsive points on this broader constitutional issue. Ms. Ray suggested that Amadeiros Torres was designed to protect the criminal defendant. I think that's not at all what Amadeiros Torres does. And I think that the concern about these prior offenses being put before the jury is something that's completely addressed by the old chief decision. It would be very logically extended to address that element the same way it addresses the underlying felony element. And while this seems like a broad constitutional argument, in practice it's not going to change much of anything. Because in the vast majority of ACCA cases, you have an offense committed in 1995, 2000, and 2005. Those are clearly separate occasions. Defendants are always going to stipulate for those. And you're going to end up with the same outcome you have here. It's only in cases like this where there are genuine disputes of fact that go beyond the elements of the offense that you need that jury is a fact-finding bulwark. And given the phrase in the sentence here, I think it clearly shows how important that jury finding is. Thank you very much, Mr. Carpenter. Mr. Carpenter and Ms. Ray are both former Fourth Circuit clerks. And they wrote great briefs and gave a great argument today. We're very happy to have them back here with us.
judges: Diana Gribbon Motz, Roger L. Gregory, Andre M. Davis